## SUPREME COURT.

THE PEOPLE *ex rel.* RICHARD M. HENRY, respondent agt. CHARLES G. CORNELL, appellant.

No member of a *municipal corporation* has the right to a *general inspection* of all documents in the hands of any *corporate official*, at all times and from any motive, or with any object or interest, irrespective of the fact whether he has any personal interest in such documents, or any information to be derived therefrom.

Such general inspection can be had only where the member has a private or personal interest in such documents or the information to be derived therefrom.

And this rule applies to a corporator who is also a member of a public association organized within the municipal corporation, and who makes application for such inspection on behalf of such association. (*Reversing this case*, 32 *How.* 149.)

*New York General Term, April,* 1868.

*Present,* BARNARD, P. J.; INGRAHAM *and* CARDOZO, *Justices.*

Appeal from an order at special term granting a writ of peremptory mandamus in this case.

The relator, Richard M. Henry, obtained from Mr. Justice GEORGE G. BARNARD, an alternative mandamus to Charles G. Cornell, street commissioner of the city of New York, commanding the latter to permit the relator to see and inspect certain contracts and vouchers on file in the street department of said city, or show cause to the contrary thereof. The relator's affidavit showed that he was a citizen of said city, and a member of the corporation, "The mayor, aldermen and commonalty of the city of New York; that Cornell was an officer of said corporation, being the head of the street department, a department of the government of said corporation; that said Cornell, as such street commissioner, had in his custody certain contracts for various public works done under his direction, and certain vouchers for payment of the public moneys of said corporation made for such works; that the relator had the right, as a member of said corporation, to see and inspect all such contracts

and vouchers, and that it was the duty of said Cornell to exhibit them to any member of the corporation; that the relator had applied to said Cornell in August, 1866, for permission to see such documents, which was refused by said Cornell.

The street commissioner replied by a return, stating that he was, and always had been, willing to show such documents, but that the relator had demanded them as the attorney of the citizens' association, and claimed the right to take them; that he denied the *right* of the relator to see them; that such documents were in danger of destruction or mutilation, if they must be exhibited to any and every person; that to afford all the members of the corporation the right to inspect the files and records of his office would require additional offices and an additional staff of clerks beyond those allowed by law; that the relator must show some private personal interest in such documents before he should see them.

RICHARD O'GORMAN, *counsel to the corporation for appellant.*

The question for the court in this case is this:

Has any member of a municipal corporation the right to a general inspection of all documents in the hands of any corporate official, at all times, and from any motive, or with any object or interest, irrespective of the fact whether he has any personal interest in the said documents, or any information to be derived therefrom?

In the opinion of the judge who granted the writ (fol. 44) the question is in effect so stated.

The writ of mandamus is a prerogative writ issued in the name of the people, requiring a person or corporation to do some particular thing in the writ specified, which it is his or their office or duty to do.

The writ will not issue where the right is doubtful.

The relator must have a clear legal right to demand what is asked for in the writ. (2 *Crarey, Special Proceedings, p.* 50 *and cases there cited.*)

Now, had the relator a clear legal right to retain possession of all the contracts and vouchers made on behalf of the corporation in the year 1863, in the hands of the street commissioner, and take copies of the same?

Was it a part of the official duty of the respondent to deliver such possession?

There is no statute provision, or charter, or city ordinance obliging him to do so. If there be any such obligation it depends on charter or law.

Is, then, an official of a municipal corporation, whose corporators are all the inhabitants of a city and who number over one million, bound, as a part of his

official duty, to deliver possession of any or all of his official papers to any one of the said million who may apply therefor?

It is not alleged that the relator had any private or personal interest in any of the said papers.

He appeared, as is stated in the return, on behalf of the citizens' association.

It is not alleged that they had any private or personal interest in these papers.

The same demand might be made in behalf of any other association, whose object might be anything but praiseworthy.

Can any association of citizens—political, social, religious, conservative, or revolutionary—demand the possession of the official papers of any of the corporate officials?

The difficulties and confusion which would arise from such a rule are so great and manifest, that it seemed to the corporation imperatively necessary to obtain an authoritative decision of the court on the subject.

The court is not obliged to issue the writ in all cases. It lies in the discretion of the court, and will not be granted where great public inconvenience would be the result. (*Tapping on Mandamus, p.* 16.)

It is not argued, on the part of the respondent, that any citizen having any special object in obtaining information on any special subject has not a right to obtain that information, and to verify its correctness by personal inspection of the documents and vouchers relating thereto. The street commissioner offered the relator permission to do all that. All that is claimed is, that he has no right to take possession of all the documents, without any private or personal motive, but from any motive.

The reported cases in which questions of this nature have been discussed are, in some instances, of private moneyed corporations where stockholders had, for a specific purpose, demanded inspection of the accounts of the company.

There the right to inspect is plain and the motive easily understood.

Yet in these cases the courts have required from the relator evidence that "the party applying for such inspection had told his object in so applying." (*King* agt. *Wilts & Barkcand Co. Ad. & Ell.* 479; *Angel & Ames on Corporations, p.* 717.)

But why was the relator so required to state his object?

Clearly in order that it should appear that he had a special personal object which concerned his own interest, and which he had the right to protect.

The interest represented by the relator in this instance is not his own private interest, or the private interest of any one.

He claims these documents as the representative of a public association of citizens who have assumed the office of protecting the public interest, and to be, in effect, justices and guardians thereof.

But the street commissioner himself holds that position by appointment of the mayor, with the assent of the common council.

He is himself a quasi-trustee, responsible indeed to the *cestui que trusts* for all wrong done to any of them, and bound to give information to any one of them, in any matter in which the inquirer is personally concerned.

It is a quarrel in this case, not between a *cestui que trust* and a trustee, but between a trustee legally appointed, viz., the street commissioner, and one who claims to be a trustee, but whose appointment is under authority of law but voluntary.

The relator appears here in the capacity of a public inspector, invested with powers to demand a general investigation, not by reason of any personal interest at stake, but by reason of his representing a superior public power, entitled to make such demand.

It is submitted that the cases referred to in the judge's opinion do not support the conclusion to which he arrived.

People *ex rel.* Henry agt. Cornell.

They will be found on examination to be all cases where the fact of a special personal interest in the inquiry on the part of the inquirer was before the court.

*Rogers* agt. *Jones*, 5 *D. & R.* 484, was a litigation between his tenants of manor concerning a right of common claimed by both.

A mandamus was directed to the steward of the manor to exhibit the court rolls, which were the record of title in the matter.

There the relator claimed the aid of the court as a tenant; and as the rolls were his evidence of title, his interest in the examination of them was manifest.

*Herbert* agt. *Ashturner* was a rule to show cause in a suit pending, why applicant should have inspection of the books of the sessions of Kendale.

The application was made in the cause, and the applicant's interest in the inspection was clear.

*King* agt. *Babb*, 3 *T. R.*, 580, is in favor of the views of the appellant in this case at bar, as far as it goes; as was also *King* agt. *Allgood*.

But these were not cases of mandamus, but of rules granted to litigants in a suit pending.

*King* agt. *Lucas*, 19 *East R.* 235, was a case of mandamus.

The objection to issuing the writ was that no suit was pending, which objection was clearly invalid and Lord ELLENBOROUGH, C. J., so decided.

But it appears in his answer that the applicant, Searle, claimed certain copyhold lands, within certain manors and applied to the steward of the manor for leave to examine the court rolls.

In this, as in *Rogers* agt. *Jones*, the object was clear, the interest of the applicant in the inquiry was manifest.

*King* agt. *Shelley*, 3 *Term R.* 143, was of the same opinion.

The dictum on *Glover on Corporations* is founded on these cases, and limited as it is to an inspection "on all proper occasions," is right enough.

But the appellant contends that no "proper occasion" existed in the case at bar.

The power granted to the relator in this case goes far beyond any applied for in any of the cases cited.

There the interest of the appellant appeared; the object of the inquiry was patent; the papers sought to be examined were such as contained specified information on the subject of the inquiry.

Here no special interest is claimed to have existed.

The object of the inquiry is not to subserve any private purpose, and no injury can occur from a refusal. The documents which the appellant is commanded to exhibit, are not a special class of documents, but all documents which came into his possession during a certain year.

These documents probably related to many hundred transactions.

The inquiry was not directed as to one or a dozen transactions, but to all.

The action of the court below in this case is reported in 32 *How. p.* 149, and will be drawn into a precedent in future.

It is important that it should be authoritatively settled whether such action was in accordance with the law or not.

A rule on this question is needed.

In order to obtain such a rule, the counsel to the corporation has deemed it advisable that this case should be discussed before the general term of this court, and a decision obtained which will guide public officials in the future.

## JOSEPH F. DALY, *for relator, respondent.*

I. The relator claims the right, as a member of this corporation, to see and inspect the papers on file in the street department.

II. The relator, as a citizen, has a common interest with other members of the corporation, in the matters of which the street department has control, and the papers relating to such matters.

III. The right of the relator, as a citizen, to inspect these papers, rests upon the same basis as every right under our free institutions.

The *res publica*, from which our republican government takes its name, includes every part and item of the commonwealth; and it is a novel doctrine for the street commissioner to maintain that the papers and records relative to the common property belong to the street commissioner exclusively, or that his right to them extends further than their keeping in proper shape for exhibition at all times.

These papers which we call for relate to the public streets, roads and works of this city. We claim an equal right in all; to use the public streets and to inspect the records concerning them. The street commissioner's duties are alike to both: to keep them ready for such use.

The street commissioner, as the agent of the corporation and its members, uses their money to preserve their property, and files his vouchers and evidences of the proper expenditure of such money.

Why are these evidences preserved, if not to be shown when demanded?

What greater or more personal interest can the relator show than that he is a member of the corporation, and that he desires to see the proofs of the proper expenditures of the common money by the common agent?

IV. In England, the right of a member of a corporation to inspect the documents of the corporation, and to have a mandamus compelling the custodian thereof to show them, is well settled (*Wilcock on Mun. Cor.* 349, *and cases cited*); also, the right of a subject to inspect documents of public proceedings lodged in the custody of public officers (1 *Wiss.* 297; *Id.* 240; 1 *Black's R.* 39; *Rex and King*, 2 *T. R.* 234 *and* 304); also, the right of a manorial tenant to have a mandamus compelling the lord to exhibit the court rolls and books. (3 *T. R.* 141; 10 *East*, 235, *and other cases cited above.*)

V. These cases in the English books claim that the relator must show a private right. But if the right be thus far conceded under a monarchial government, surely under our republican government one step further may be taken, and the relator permitted to show as his right the right which underlies our whole fabric of government.

In England, public officers are the masters of the people and the agents of the sovereign. In America they are servants of the sovereign people. The right of the relator is superior to any which an English subject could ever claim.

If this fact is not clearly appreciated by the street commissioner, it is time that the court solemnly declared it.

VI. In respect to the books, records and accounts of the county of New York, the statute has declared such a right in the people, without condition or exception. (1 *Rev. Stat. ch.* 12, *tit.* 2, *art.* 1.)

In respect to public documents of the city of New York, up to the year 1699, the statutes of the state have expressly declared this right, without condition or exception. (*Laws of* 1865, *ch.* 171.)

There is no reason for making a distinction between the public papers of to-day and those of a century past, or between those of the city and those of the county. And if the legislature has omitted to declare our right in the former, it is simply a defect of police regulation, which the court will remedy by its writ of mandamus, because "in justice and good government it ought to be done." (6 *Bac. Abr. tit Mand.* 418.)

At all events, the intent of our law makers is plain, and the court is bound to carry that intent into force.

VIII. The street commissioner offers but two reasons for refusing an inspection of the papers, viz: That it "would involve a serious disturbance of the necessary details of his office, and impede the proper working thereof." That it would require a larger office and a "larger staff than he now employs to secure said records and protect them from loss, injury and mutilation.

We answer to the first, that if we have the right, the showing of such papers is a part of the necessary details and business of his office.

And to the second: 1. That the Revised Statutes of this state, making it forgery, and punishable as such, to tamper with these records, sufficiently protects the public property, as other penal statutes protect private property. (4 *R. S. ch.* 1, *tit.* 3, *art.* 3, §§ 26 *and* 69.) And that: 2. The danger of mutilation of records is only to be apprehended from persons having private interests in them, and not from a party having the public good in view, as the relator, Mr. Henry, has.

The counsel of the street commissioner, who speaks of the destruction and robbery of public papers which has heretofore occurred, will no doubt readily admit that the criminal must have been personally and pecuniarily interested in the missing documents.

It is least dangerous to entrust them to the investigation of idle curiosity, and even to a person who seeks them with motives inimical to the official who has possession of them; for in the latter case the searcher will be only too solicitous to carefully preserve evidences of delinquency, and the only danger consists in leaving them in the undisturbed possession of the official himself.

The danger apprehended by the street commissioner is too remote to influence the court.

The COURT, on the argument, *reversed* the judgment at special term.   No written opinion was given.

———•◆•———

# COURT OF APPEALS.

## GEORGE H. McINTYRE, Administrator, &c., agt. THE NEW YORK CENTRAL RAILROAD COMPANY.

A *railroad passenger* has a right to a seat in the cars, and it is the duty of the railroad company to provide him with one.

If, in discharging that duty, the company require the passenger to perform an act which is perilous in itself, in passing from one car to another, in a dark night, when the cars are in motion, and in doing which the passenger loses his life, the *negligence, if any*, which that act involves should be imputed to the *company alone.*

Thus, where the railroad company, on arriving at a station, in the evening, detached and left the rear car, notifying the passengers therein to go into the next car forward, and after a stoppage of some ten or twelve minutes the cars moved on, when one of the employees of the road, discovering a number of passengers stand-